QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Melissa J. Baily (Bar No. 237649)
melissabaily@quinnemanuel.com
Antonio R. Sistos (Bar No. 238847)
antoniosistos@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Patrick D. Curran (Bar No. 241630)
patrickcurran@quinnemanuel.com
111 Huntington Avenue, Suite 520
Boston, MA 02199
Telephone:     (617) 712-7100
Facsimile:     (617) 712-7200

Attorneys for Defendant GOOGLE LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| LONGITUDE LICENSING LIMITED,<br><br>                    Plaintiff,<br><br>          vs.<br><br>GOOGLE LLC,<br><br>                    Defendant. | Case No. 3:23-cv-03046-VC<br><br>**DEFENDANT GOOGLE LLC'S PARTIAL § 101 MOTION TO DISMISS** |

# **TABLE OF CONTENTS**

**Page**

I.      U.S. PATENT NOS. 7,668,365 AND 8,355,574......................................................... 1

    A.      The Asserted '365 and '574 Claims Are Directed To An Abstract Idea. ................. 2

        1.      The claims recite abstract, results-oriented functional language. .................. 2

        2.      The claim language confirms the claims recite abstract ideas. ...................... 4

    B.      The Asserted '365 and '574 Claims Lack an Inventive Concept. ............................. 6

        1.      The claim limitations are well-known, conventional, and routine................. 6

        2.      The claims fail to recite any explanation as to how to perform any of the recited limitations........................................................................................ 6

    C.      Longitude's Conclusory Allegations Do Not Preclude Dismissal ........................... 7

II.     U.S. PATENT NO. 7,454,056 ...................................................................................... 10

    A.      The Asserted '056 Patent Claims Are Directed To An Abstract Idea..................... 10

    B.      The Asserted '056 Claims Lacks An Inventive Concept. ........................................ 11

    C.      Longitude's Conclusory Allegations Do Not Preclude Dismissal. ......................... 11

III.    U.S. PATENT NO. 7,945,109 ...................................................................................... 12

    A.      The Asserted '109 Claims Are Directed To An Abstract Idea. ............................... 12

    B.      The Asserted '109 Claims Lack An Inventive Concept........................................... 14

    C.      Longitude's Conclusory Allegations Do Not Preclude Dismissal. ......................... 14

IV.     CONCLUSION .............................................................................................................. 15

1

2

## **<u>TABLE OF AUTHORITIES</u>**

### **<u>Cases</u>**

*Adaptive Streaming Inc. v. Netflix, Inc.*,
   836 Fed. App'x 900 (Fed. Cir. 2020) ............................................................................4

*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) ........................................................................... 1, 4, 6, 13, 14

*Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*,
   No. 21-cv-08294-VC, 2022 WL 4093168 (N.D. Cal. Sept. 7, 2022) ....................................4, 7

*Boom! Payments, Inc. v. Stripe, Inc.*,
   No. 19-cv-00590-VC, 2019 WL 6605314 (N.D. Cal. Nov. 19, 2019), *aff'd* 839
   F. App'x 528 (Fed. Cir. 2021) .............................................................................9

*Bridge & Post, Inc. v. Verizon Commcn's, Inc.*,
   778 F. App'x 882 (Fed. Cir. 2019) ........................................................................7

*Broadcom Corp. v. Netflix Inc*,
   No. 3:20-CV-04677-JD, 2021 WL 4170784 (N.D. Cal. Sept. 14, 2021) ..............................11

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018) ........................................................................3, 4

*CardioNet, LLC v. InfoBionic, Inc.*,
   955 F.3d 1358 (Fed. Cir. 2020) ..........................................................................13

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019) ................................................................ 1, 2, 3, 8, 15

*Crandall Techs. LLC v. Vudu, Inc.*,
   No. 20-CV-04849-VC, 2021 WL 521215 (N.D. Cal. Feb. 12, 2021) ..............................5, 15

*Credit Acceptance Corp. v. Westlake Servs.*,
   859 F.3d 1044 (Fed. Cir. 2017) ........................................................................5, 11

*Diamond v. Diehr*,
   450 U.S. 175 (1981) .........................................................................................9

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ........................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ......................................................................2, 3, 6

*Glasswall Sols. Ltd v. Clearswift Ltd.*,
   754 Fed. App'x 996 (Fed. Cir. 2018) .....................................................................6

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
    60 F.4th 1349 (Fed. Cir. 2023) ...........................................................................8

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc*.,
    50 F.4th 1371 (Fed. Cir. 2022) ...........................................................................7

*Intellectual Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*,
    792 F.3d 1363 (Fed. Cir. 2015) ...........................................................................6

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017) ...........................................................................6

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ........................................................................5, 8

*Intellectual Ventures II LLC v. JP Morgan Chase & Co*.,
    No. 13-cv-3777, 2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ...............................9

*RecogniCorp, LLC v. Nintendo Co., Ltd.*,
    855 F.3d 1322 (Fed. Cir. 2017) ......................................................................2, 3, 4

*Simio, LLC v. FlexSim Software Prod., Inc*.,
    983 F.3d 1353 (Fed. Cir. 2020) ........................................................................7, 9

*Sungkyunkwan Univ. v. LMI Techs. (USA) Inc.*,
    No. 16-cv-06966- VC, 2017 WL 1900737 (N.D. Cal. May 3, 2017) .............2, 3, 9, 11, 12, 14

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016) ...........................................................................9

*Telesign Corp. v. Twilio, Inc.*,
    No. 18-CV-03279-VC, 2018 WL 10638619 (N.D. Cal. Oct. 19, 2018), *aff'd*,
    789 F. App'x 881 (Fed. Cir. 2020)........................................................................8

*In re TLI Commc'ns LLC Pat. Litig.*,
    87 F. Supp. 3d 773 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016)..............5, 9

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) .......................................................................9, 12

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .............................................................................9

*Virginia Innovation Scis. Inc. v. Amazon.com, Inc.*,
    227 F. Supp. 3d 582 (E.D. Va. 2017), *aff'd sub nom. Virginia Innovation Scis.,*
    *Inc. v. HTC Corp*., 718 F. App'x 988 (Fed. Cir. 2018)..............................................5

*Voit Techs., LLC v. Del-Ton, Inc.*,
    757 Fed. App'x 1000 (Fed. Cir. 2019) ..................................................................4

*White v. Dunbar*,
   119 U.S. 47 (1886) ................................................................................................9

**Statutes**

35 U.S.C. § 101 ........................................................... 1, 3, 4, 5, 6, 7, 8, 9, 12, 13, 14

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................................................7

Fed. R. Civ. P. 12(c) ...............................................................................................1

Google respectfully moves to dismiss with prejudice four of the seven patents asserted in Longitude Licensing Ltd. ("Longitude")'s Complaint because the asserted claims are directed to ineligible subject matter under 35 U.S.C. § 101.[1] *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 765 (Fed. Cir. 2019). The two-step framework for patent ineligibility in *Alice Corp. v. CLS Bank International* considers whether the claims are directed to an abstract idea that merely uses computers as a tool—and if so, whether the other claim elements add an "inventive concept" that is "sufficient to 'transform' the claimed abstract idea into a patent-eligible application." 573 U.S. 208, 216-18 (2014). The asserted claims fail both steps and are ineligible as a matter of law.

## I.      U.S. PATENT NOS. 7,668,365 AND 8,355,574

The '574 patent claims priority to the '365 patent, and both patents share a specification. The Complaint asserts claim 32 of the '365 patent and claims 3 and 4 of the '574 patent and treats those claims as representative. Compl. ¶¶ 116, 118, 141, 143. The claims state:

| '365 Patent – Claim 32 | '574 Patent – Claim 3 |
|---|---|
| 32. An image processing method comprising: | 3. A method of image processing, the method comprising: |
| [a] determining the main object image data corresponding to the main object characterizing the image; | [a] determining a main object in an image generated by an image generating apparatus, wherein the main object includes at least a human face, and wherein the determining of the main object is implemented by determining whether the image includes the human face; and |
| [b] acquiring the properties of the determined main object image data; | [b] adjusting image quality of the main object using correction conditions corresponding to |

[1] All seven asserted patents claim ineligible subject matter and are invalid under § 101. In this initial response to the Complaint, due to the Court's 15-page limit for motions to dismiss, Google has limited its briefing to closely-related abstract ideas in four asserted patents. Once the parties have the benefit of the Court's ruling on this motion, Google may file a separate Rule 12(c) motion for judgment on the pleadings addressing the remaining three asserted patents, so that the Court may dispose of the entire case at the pleading stage if the Court agrees all asserted claims are ineligible under § 101.

| | |
|---|---|
| [c] acquiring correction conditions corresponding to the properties that have been acquired; and | properties of the determined main object, wherein a parameter used in adjusting the image quality is a highlight, a shadow, brightness, contrast, color balance, or memory color, and |
| [d] adjusting the picture quality of the main object image data using the acquired correction conditions; | |
| [e] wherein each of the operations of the image processing method is executed by an integrated circuit. | [c] wherein each operation of the method of image processing is executed by one of a personal computer, a printer, or a display device. |

The Complaint acknowledges image processing and image quality adjustments were conventional and well known, admitting "prior systems [] processed image data across the board." Compl. ¶¶ 42, 55. It alleges the purported novelty of the '365 and '574 claims lies in limiting image improvements to a specific *region*: the identified "main object." *Id.* ¶¶ 42-43, 55.

### A.   <u>The Asserted '365 and '574 Claims Are Directed To An Abstract Idea.</u>

#### 1.   The claims recite abstract, results-oriented functional language.

In determining whether claims are directed to an abstract idea, a court must look at the "focus of the claims," *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016), and "consider the claims in their entirety to ascertain whether their character as a whole is directed to excluded subject matter," *ChargePoint*, 920 F.3d at 765.

Here, the asserted '365 and '574 claims are directed toward the abstract idea of making part of an image look better—specifically, identifying and enhancing the "main object" of an image. The claim language is recited in highly generic terms, focusing on this "abstract end-result," not on "a specific means or method for improving technology." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (citation omitted); *see also Sungkyunkwan Univ. v. LMI Techs. (USA) Inc.*, No. 16-cv-06966-VC, 2017 WL 1900737, at *1 (N.D. Cal. May 3, 2017) (Chhabria, J.) ("Rather than disclose a concrete solution, it seeks to monopolize the very idea of a solution."). '364 claim 32 recites a method which (1) determines the main object of an image, (2) acquires "properties" of the corresponding main image data, (3) acquires "correction conditions" for those properties, and (4) uses those "correction conditions" to adjust the picture quality of the main object. '574 claim 3 differs in requiring that the main object include a "human face" and that the image

adjustment consider at least one of a set of specified parameters, like brightness or contrast. The claimed methods run on generic hardware—either "an integrated circuit" or "a personal computer, a printer, or a display device"—that executes basic computer functions such as "acquiring" conditions and "adjusting" data based on those conditions. But the asserted claims provide no details on *how* to determine the main object of the image, or *how* to adjust the image quality of that main object.[2] *Sungkyunkwan*, 2017 WL 1900737, at *1 ("The method of optimizing exposure on a structured-light 3D camera—the *how* that's nominally the subject of the claimed invention—is absent."). This "result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101," *Elec. Power Grp.*, 830 F.3d at 1356, and where claims simply restate or "minimal[ly] narrow[]" the abstract idea, this "does not affect whether [they are] directed to an abstract idea." *BSG Tech LLC v. Buyseasons, Inc*., 899 F.3d 1281, 1287 (Fed. Cir. 2018).

The Federal Circuit has repeatedly found that patent claims involving generalized, functional computing processes such as those recited above are abstract, including those that improve image quality. For example, in *Yu v. Apple Inc.*, the Federal Circuit found claims directed to "the abstract idea of taking two pictures (which may be at different exposures) and using one picture to enhance the other in some way" invalid under § 101. 1 F.4th 1040, 1043 (Fed. Cir. 2021). The Federal Circuit emphasized that the practice of enhancing an image—in *Yu*, by using a second image—"***has been known by photographers for over a century***." *Id*. (emphasis added). And while Yu sought to evade patent ineligibility by pointing to portions of the specification with more detail than the claims, the Federal Circuit was unconvinced by "the mismatch between the specification statements that Yu points to and the breadth of claim 1." *Id*. at 1044-45 (*quoting ChargePoint*, 920 F.3d at 769).

Similarly, in *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322 (Fed. Cir. 2017), the patent claims at issue involved a method for "creating a composite image" wherein "facial feature images are associated with facial feature element codes" and then edited or reproduced using those codes. The Federal Circuit found the claims were directed to "the abstract idea of encoding and decoding

---

[2]  Dependent '574 claim 4 further requires that the "correction conditions" differ when the main object is "a night time scene and a human face" as opposed to just "a human face," again without specifying *how* the correction conditions differ.

image data," where a user "starts with data, codes that data … and ends with a new form of data," and nothing about the inputs and parameters identified in the claims "transform[ed] the abstract idea of encoding and decoding into patent-eligible subject matter." *Id.* at 1327-28. Likewise, in *Voit Techs., LLC v. Del-Ton, Inc.*, 757 Fed. App'x 1000, 1002-03 (Fed. Cir. 2019), the Federal Circuit held patent claims directed to editing image data, including improving the efficiency and/or accuracy of compressing, storing, and/or de-compressing image data, were invalid under § 101. And *Adaptive Streaming Inc. v. Netflix, Inc.*, 836 Fed. App'x 900, 901-02 (Fed. Cir. 2020) invalidated claims directed to converting formats of image data. Longitude's claims are no different.

### 2.      The claim language confirms the claims recite abstract ideas.

"The Supreme Court has held that 'fundamental . . . practice[s] long prevalent in our system of commerce' are abstract ideas." *BSG Tech*, 899 F.3d at 1285 (quoting *Alice*, 573 U.S. at 219). "If a claimed invention only performs an abstract idea on a generic computer, the invention is directed to an abstract idea at step one." *Id.* (citing *Alice*, 573 U.S. at 217–22); *Bluebonnet Internet Media Servs., LLC v. Pandora Media, LLC*, No. 21-cv-08294-VC, 2022 WL 4093168, at *1 (N.D. Cal. Sept. 7, 2022) (Chhabria, J.) ("Implementing an abstract idea with computers does not impart patent eligibility."). This is precisely what the asserted claims do: they implement abstract processes that do not require a computer on conventional computing hardware. Claim 3 of the '574 patent could be performed manually by humans:

| '574 Patent – Claim 3 | Performed By Humans |
|---|---|
| 3. A method of image processing, the method comprising: | |
| [a] determining a main object in an image generated by an image generating apparatus, wherein the main object includes at least a human face, and wherein the determining of the main object is implemented by determining whether the image includes the human face; and | looking at a picture to identify a human face that serves as the focus of the picture, *e.g.* in the *Mona Lisa*, |
| [b] adjusting image quality of the main object using correction conditions corresponding to properties of the determined main object, wherein a parameter used in adjusting the image quality is a highlight, a shadow, brightness, contrast, color balance, or memory color, and | adjusting or restoring part of the Mona Lisa's face, *e.g.* by brightening faded colors or enhancing shading, |

| [c] wherein each operation of the method of image processing is executed by one of a personal computer, a printer, or a display device. | using eyes to determine the main object, and a paintbrush to adjust said object. |
| --- | --- |

The other asserted '574 claim fares no better: '574 claim 4 depends from claim 3 and merely adds the common-sense and abstract idea that things look different at night. Specifically, claim 3 describes using different corrections for a human face in a nighttime scene, as compared to a human face not viewed at night. It could thus be practiced by adjusting colors, contrast, or brightness in any way that would be different for faces depicted at night than for faces seen during the day.

Claim 32 of the '365 meets the same fate. As discussed above, '365 claim 32 is broader than '574 claim 3, in that it does not require a human face *at all*, and does not require using *any* specified parameters. It could thus be practiced by making alterations to *any* object within an image deemed the "main object," *e.g.* by sharpening the colors on fruit within a Cézanne still life. This is an abstract idea as old as drawing—pick an object in an image, and then make that object look better.

Courts regularly hold claims abstract if they simply automate a manual task.[3] That is all these claims do—they recite a computer performing the same manual tasks children routinely perform when selecting different crayons for different parts of their drawings, to apply different colors in different regions and improve the image. The simple and abstract ideas recited in these claims do not become patent eligible simply because they run on a general-purpose computer. *Crandall Techs. LLC v. Vudu, Inc.*, No. 20-CV-04849-VC, 2021 WL 521215, at *1 (N.D. Cal. Feb. 12, 2021) (Chhabria, J.) (granting motion to dismiss on § 101 grounds; rejecting patentee's claim of an "inventive concept" that would "transform the abstract idea into a patent-eligible application" where

---

[3]   *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1055 (Fed. Cir. 2017) ("[M]ere automation of manual processes using generic computers does not constitute a patentable improvement in computer technology."); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1318 (Fed. Cir. 2016) (finding claims abstract where "with the exception of generic computer-implemented steps, there is nothing in the claims themselves that foreclose them from being performed by a human, mentally or with a pen and paper"); *In re TLI Commc'ns LLC Pat. Litig.*, 87 F. Supp. 3d 773, 784 (E.D. Va. 2015), *aff'd*, 823 F.3d 607 (Fed. Cir. 2016) ("[T]ying an abstract idea to a general purpose computer or to the Internet, without more, is generally insufficient to make an abstract idea patentable[.]"); *Virginia Innovation Scis. Inc. v. Amazon.com, Inc.*, 227 F. Supp. 3d 582, 595 (E.D. Va. 2017), *aff'd sub nom. Virginia Innovation Scis., Inc. v. HTC Corp*., 718 F. App'x 988 (Fed. Cir. 2018) ("[W]hen claims are laid out in purely functional language and use conventional technology in a typical manner, they are not patent eligible.").

the claim language recited generic hardware and networks, such that the claimed "steps make *use* of technology, but they do not describe improvements to the technology *itself*") (emphases added).

The '365 and '574 claims are directed to an abstract idea and fail the first *Alice* step.

**B.    The Asserted '365 and '574 Claims Lack an Inventive Concept.**

**1.    The claim limitations are well-known, conventional, and routine.**

Patent claims that "simply instruct the practitioner to implement the abstract idea . . . on a generic computer" are insufficient to add an inventive step and fail under § 101. *Alice*, 573 U.S. at 225. That is all the '365 and '574 claims do here. As recounted above, the claims merely recite conventional steps that can be implemented by a human (specifically, determining the "main object" of an image and making some change to that main object), and require that those steps be implemented on an "integrated circuit" or "a personal computer, a printer, or a display device." Courts routinely find generic computer functions insufficient to add an inventive concept. *Alice*, 573 U.S. at 223 ("Stating an abstract idea while adding the words 'apply it with a computer' [] cannot impart patent eligibility"); *Intellectual Ventures I LLC v. Capital One Bank (USA), Nat'l Ass'n*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea").

**2.    The claims fail to recite any explanation as to how to perform any of the recited limitations.**

"Without an explanation of the 'mechanism' for '*how* the result is accomplished,' th[e] purported feature[s] of the invention cannot supply an inventive concept." *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331-32 (Fed. Cir. 2017) (emphasis added) (quoting *Internet Patents Corp.*, 790 F.3d at 1348); *see also Glasswall Sols. Ltd v. Clearswift Ltd.*, 754 Fed. App'x 996, 998 (Fed. Cir. 2018) (claims were patent ineligible where they did not disclose "how" to implement the claimed concept); *Elec. Power Grp.*, 830 F.3d at 1355 (at step two, "[i]nquiry . . . must turn to any requirements for *how* the desired result is achieved") (emphasis in original).

Nothing in the asserted claims provides any specifics or concrete application of the recited steps or generic computer functions. These claims do not recite *how* the main object is determined, *how* that main object is determined to include a face, or *how* the adjustment to be applied to the

main object is ascertained. Rather, the claims merely recite that these functional steps are performed. The asserted claims do not even require that the adjustment actually *improve* the image; alterations that reduce or even destroy picture quality can still fall within the scope of the claims.

### C.       Longitude's Conclusory Allegations Do Not Preclude Dismissal

Likely aware of the significant § 101 issues it faces, Longitude's Complaint repeatedly asserts in conclusory fashion that its claims are directed to "technical problems." But this Court is not required to accept "legal conclusions as true, even if couched as factual allegations," such as "repeated characterization of [] inventions as 'technical innovations.'" *Bridge & Post, Inc. v. Verizon Commcn's, Inc.,* 778 F. App'x 882, 894 (Fed. Cir. 2019); *Bluebonnet*, 2022 WL 4093168, at *2 (Chhabria, J.) ("As a matter of law, Bluebonnet's factual assertions do not point to a possible issue of fact that requires going beyond the claims themselves.").[4]

Longitude asserts that the '365 and '574 claims "are directed to improvements to image processing devices and operations that automatically process digital image data corresponding to the subject of the image, for example, a human face, to more accurately display the subject's natural appearance." Compl. ¶¶ 41-43; *see also id.* at ¶¶ 54-55. But as detailed above, the claims do not recite *how* to improve image processing. In fact, the claims do not even require improving the image, and could be practiced by a kindergartener "enhancing" the *Mona Lisa* by coloring in her face.[5] Longitude's allegations that its claims provide any improvement to images, let alone a patent-eligible one, are accordingly not credible and should be discarded. *Int'l Bus. Machines*, 50 F.4th 1371 at 1378 (invalidating a patent "written in result-based functional language that does not sufficiently describe how to achieve these results in a non-abstract way") (citation omitted); *see also*

---

[4]  *See also Simio, LLC v. FlexSim Software Prod., Inc*., 983 F.3d 1353, 1365 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating a complaint under Rule 12(b)(6)."); *Int'l Bus. Machines Corp. v. Zillow Grp., Inc*., 50 F.4th 1371, 1379 (Fed. Cir. 2022) ("[T]he district court need not accept a patent owner's conclusory allegations of inventiveness. . . . Only plausible and specific factual allegations that aspects of the claims are inventive are sufficient.") (citations omitted); *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (rejecting "conclusory" assertions that the claimed invention "solved [technological] problems," "improved the art," "represented a significant advance over existing approaches," and "were not well-known, routine, or conventional in the field").

[5]  For example, the child could determine that the Mona Lisa had a face ('574 claim 3[a]), then adjust that face's color balance by coloring it orange. '574 claim 3[b].

*Telesign Corp. v. Twilio, Inc.*, No. 18-CV-03279-VC, 2018 WL 10638619, at *2 (N.D. Cal. Oct. 19, 2018) (Chhabria, J.), *aff'd*, 789 F. App'x 881 (Fed. Cir. 2020) (resolving § 101 issues on motion to dismiss where "Telesign has not plausibly alleged any concrete improvement that could provide an inventive concept sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the abstract idea itself").

Longitude asserts that the claims address the prior art problem of "accurately identifying the image's main object, or focus." Compl. ¶¶ 44, 56. But on Longitude's own reading and application of the claims, no specific algorithm for identifying a main object or focus is required by or recited in the claims; Longitude treats the claims functionally, requiring only that a "main object" *be* determined. The asserted claims could presumably be met by any object recognition process, no matter how poorly it performs or how long it has existed. Longitude similarly asserts that prior art techniques "do not account for 'subtle differences in the main object' of an image." Compl. ¶¶ 45, 57. But neither do the asserted claims, which do not even allude to any such "subtle differences"— let alone require using them, or explain how those "subtle differences" should be used. Nor do the claims preclude applying the same "adjustment" to the rest of the image, in addition to whatever is selected as a "main object."

Longitude similarly cites to large portions of the specification that it contends demonstrate technical improvements over the prior art. Compl. ¶¶ 46-50, 58-61. But any inventive concept must be "in the claims," not in unclaimed "technological details set forth in the patent's specification." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1322 (Fed. Cir. 2016); *see also Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) ("The analysis at step one must focus on the claim language.") (citation omitted). That is because "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims." *ChargePoint*, 920 F.3d at 769. Significantly, in its infringement allegations, Longitude does not contend that Google uses *any* of these specification structures. Compl. ¶¶ 119-125, 143-151. Longitude may not plausibly point to structures in the specification to show patent eligibility, then ignore those same structures in its infringement case. *White v. Dunbar,* 119 U.S. 47, 51-52 (1886) (patent claim is not a "nose of wax"

to be twisted one way to preserve a patent's validity and another way to catch an alleged infringer). "The main problem that [Longitude] cannot overcome is that the *claim*—as opposed to something purportedly described in the specification—is missing an inventive concept." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338–39 (Fed. Cir. 2017). Because Longitude's conclusory citations to the specification do not relate to the claim language, those citations to the specification create no issues on a § 101 motion to dismiss.  *See, e.g., Sungkyunkwan*, 2017 WL 1900737, at *2-*3 (Chhabria, J.) (granting motion to dismiss on § 101 grounds and rejecting patentee's claim that teachings in specification created factual issues related to an alleged inventive concept; "the claim at issue in this litigation doesn't *claim* these steps" that the patentee cites in the specification, and the patentee "hasn't even tried to offer a limiting construction to somehow *import* the specification's teachings into the asserted claim") (emphases added).

Finally, Longitude's conclusory assertions of novelty do not preclude dismissal: "the alleged novelty of the [] patent has limited, if any, relevance in determining whether the [] patent is directed to patent-ineligible subject matter." *In re TLI Commc'ns*, 87 F. Supp. 3d at 787; *see also Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, No. 13-cv-3777, 2015 WL 1941331, at *14 (S.D.N.Y. Apr. 28, 2015) (citing *Diamond v. Diehr,* 450 U.S. 175, 190 (1981) and *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014)) ("Both the Supreme Court and Federal Circuit have repeatedly emphasized the independence of the inquiries" between novelty and patent eligibility.). Thus, even if it were true that these patents claim something new, "a *new* abstract idea is still an abstract idea." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016) (emphasis in original); *Simio*, 983 F.3d at 1364 (Fed. Cir. 2020) (purported novelty "does not avoid the problem of abstractness") (citation omitted); *Boom! Payments, Inc. v. Stripe, Inc.*, No. 19-cv-00590-VC, 2019 WL 6605314, at *1 (N.D. Cal. Nov. 19, 2019) (Chhabria, J.), *aff'd* 839 F. App'x 528 (Fed. Cir. 2021) (plaintiff's "assertions as to the method's novelty and usefulness – even if true – do not strip the method of its fundamentally abstract nature.").

**II.     U.S. PATENT NO. 7,454,056**

**A.     The Asserted '056 Patent Claims Are Directed To An Abstract Idea.**

Asserted claim 10 of the '056 patent , which Longitude treats as representative of the asserted '056 claims (*see, e.g.*, Compl. ¶¶ 166-67), is directed to determining and adjusting a subject area of an image using "color balance correction." It thus recites an abstract idea: improve the color in part of an image.  This is just as abstract as the idea in the '365 and '574 claims discussed above, and as Longitude applies the claim, it recites a process humans routinely perform without computers:

| '056 Patent – Claim 10 | Performed By Humans |
|---|---|
| 10. An image processing device for executing color balance correction on image data of a photographed image, said image processing device comprising: | |
| [a] an image data acquisition module that acquires said image data; | acquiring a picture, *e.g.* looking at the *Mona Lisa*, |
| [b] a specific subject area determination module that determines a specific subject area in said photographed image, wherein said specific subject area contains a specific subject in said photographed image, and wherein said specific subject area determination module determines said specific subject area using pixel values of pixel data included in a target area for determination, and a position of said target area in said photographed image; | identifying the position of the Mona Lisa's face in the picture, |
| [c] a specific subject characteristic value calculation module that calculates a specific subject characteristic value, wherein said specific subject characteristic value represents a characteristic of image data corresponding to said determined specific subject area; | determining some characteristic of the Mona Lisa's face, *e.g.* her skin tone, |
| [d] a correction value calculation module that calculates a correction value for color balance correction using said calculated specific subject characteristic value and a preset characteristic target value; and | determining, *e.g.*, the difference between the Mona Lisa's actual skin tone and how one believes it should look, |
| [e] a correction execution module that executes said color balance correction on said image data using said calculated correction value. | restoring the Mona Lisa's face, *e.g.* by brightening faded colors. |

As with the '365 and '574 claims, as Longitude applies '056 claim 10, it fails to recite anything more than automating a conventional human activity. A claim that does nothing more than

"mere automation of manual processes using generic computers"—in this case, color correction with any imaging "device"—it is not patentable. *Credit Acceptance Corp.*, 859 F.3d at 1055.

### B.   The Asserted '056 Claims Lacks An Inventive Concept.

As shown with the '365 and '574 patents, locating a "subject" in an image and performing processing on that object does not supply an "inventive concept" under *Alice*. The '056 claim differs only by specifying that the processing is color balance correction, which the patent acknowledges was already well-known in the art. *See* '056 patent at 1:12-25; *see also* Compl. ¶¶ 68-70. Accordingly, the '056 claim cannot provide an inventive concept either. *Broadcom Corp. v. Netflix Inc*, No. 3:20-CV-04677-JD, 2021 WL 4170784, at *7 (N.D. Cal. Sept. 14, 2021) (there is nothing inventive about "[i]mplementing an old practice in a new environment").

Far from offering a concrete inventive concept, Longitude treats purportedly-representative '056 claim 10 as entirely functional. Longitude's infringement allegations (Compl. ¶¶ 169-182) do not treat the claim as reciting, or requiring, any particular algorithm when performing each step. On Longitude's reading and application of the claim, it does not explain *how* to "determine[] a specific subject area," other than through using some unstated algorithm on data ("pixel values of pixel data," *i.e.,* image data), and is not limited to any specific method of achieving that function. Nor does Longitude treat the claim as reciting *how* to calculate the "specific subject characteristic value," *how* to calculate the "correction value," or *how* to perform "color balance correction" with those other values. There is thus no inventive concept in the claim. As this Court has aptly explained, a claim is "drawn to an abstraction" and does not offer "a concrete solution" but instead "seeks to monopolize the very idea of a solution" where it simply "recites the technological context of the invention and its end goal," and "the *how* that's nominally the subject of the claimed invention is absent." *Sungkyunkwan*, 2017 WL 1900737, at *1 (Chhabria, J.) (emphasis in original). So too here.

### C.   Longitude's Conclusory Allegations Do Not Preclude Dismissal.

Longitude asserts in conclusory fashion that the '056 patent describes a "new, improved 'color balance correction process'" (Compl. ¶ 71), but as explained above, the '056 patent admits that color balance correction was known in the art—and the '056 never purports that its process for doing so (*i.e.*, determining a "characteristic value," determining a "correction value" based on the

characteristic value and a "target value," and correcting the color balance based on the correction value) is in any way novel, "improved," or even different from such known processes for color correction. Longitude applies the claim as simply using known techniques on a *portion* of an image (a "subject area"), rather than the *entire* image. Longitude references a number of alleged "additional improvements" in the '056 patent specification, such as "weighting" pixel values, accounting for multiple subject areas, and accounting for an area ratio of the subject area to the whole image (Compl. ¶ 73)—but even if these qualified as improvements, Longitude treats none of this as actually *required* by purportedly-representative claim 10 of the '056 patent (Compl. ¶¶ 169-182), rendering it irrelevant to the § 101 analysis. *Two-Way Media Ltd.*, 874 F.3d at 1338–39; *Sungkyunkwan*, 2017 WL 1900737, at *2-*3 (Chhabria, J.) (granting § 101 motion to dismiss where patentee relied on specification disclosures, rather than claim language or a proposed claim construction importing the specification into the claim language, to assert an inventive concept).

### III.   U.S. PATENT NO. 7,945,109

#### A.   The Asserted '109 Claims Are Directed To An Abstract Idea.

As with the patents discussed above, claim 1 of the '109 patent (which Longitude treats as representative of all three asserted claims, *see* Compl. ¶ 257) describes adjusting a portion of an image. It differs in requiring that the adjustment increase the "sharpness" of one area—in this case, a person—and decrease the sharpness of other areas of the image. The claim is thus directed to an obvious abstract idea: in a picture of a person, focus on the person.

As with the other patents, '109 claim 1 uses functional, results-oriented language characteristic of patent-ineligible claims: "acquiring an image file" that contains data (like the location of a person in the image) and then using that data to "increas[e] sharpness of an area in which [a] person is located and decreas[e] sharpness of an area in which the person is not located." The claim does not explain *how* to acquire the image file, or *how* to read or store data about the position of a person in the image, or *how* to locate a person in the image, or *how* to increase or decrease "the sharpness of an area" of an image. In fact, the claim is so abstract that it can be performed manually by just looking intently at another person: human eyes will acquire an image of a person, and focus in on that person, thereby sharpening the appearance of the person (and by

focusing in on the person, causing other areas of the image to become more blurry).  As Longitude

applies the claim (Compl. ¶¶ 259-275), only steps that can be performed manually are required:

| '109 Patent – Claim 1 | Performed By Humans |
|---|---|
| 1. An image processing apparatus comprising:<br><br>    [a] a CPU, the CPU executing functions including: | |
| acquiring an image file, the image file including image data, shooting scene information, and location information of a person in the image data, and | acquiring an image by looking at a person in your field of view; |
| increasing sharpness of an area in which the person is located and decreasing sharpness of an area in which the person is not located based on the acquired location information when the acquired shooting scene information indicates a portrait scene. | focusing on the person, such that your view of that person becomes sharper, and the surrounding areas you are not focusing on become less sharp. |

These techniques are as old as photography.  Photographers have used these fundamental

optical properties to manually perform the '109 claims for decades: they "acquir[e] an image"

through the viewfinder of a camera, find the person they want to take a picture of, and then

"increas[e] the sharpness of an area in which the person is located" by turning the focus ring on the

camera to bring the person into focus (and thereby taking other areas out of focus), or by using a

fixed-focus lens with a defined depth of field.  Indeed, this is why the '109 patent claims call this a

"portrait" scene—photographic portraits with the person in sharp focus, and the background in blur,

are as old as cameras, and were common in the Civil War.[6]  That the claim requires performing these

steps on a computer does not make them any less abstract. *Alice*, 573 U.S. at 222–23.  And as the

Federal Circuit expressly found in *Yu*, image enhancement techniques that have "been known by

photographers for over a century" are abstract "idea[s] and practice[s]" for Step 1 purposes, and

claims that simply recite "the abstract idea itself" as a solution, or that recite "a generic environment

in which to carry out the abstract idea," fail the Step 1 analysis. 1 F.4th at 1043-44.

---

[6]  *See, e.g.*, Library of Congress, *Civil War Soldiers' Portraits: The Liljenquist Family Collection*, https://www.loc.gov/resource/ppmsca.37549/.   The Court may "take judicial notice of a longstanding practice" in resolving a § 101 motion to dismiss. *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1373 (Fed. Cir. 2020).

### B.      The Asserted '109 Claims Lack An Inventive Concept.

As discussed above, purportedly-representative '109 claim 1 simply describes fundamental properties of photography (and human vision). The claims do not recite a new method, or *any* specific method, for acquiring an image file. Nor do they describe some new and specific way of increasing or decreasing the sharpness of objects in the image. To the contrary, the specification acknowledges the image file can use any known standard ('109 patent at 6:53–7:34) and admits that emphasizing a region of an image is known. *Id*. at 1:19–26 (acknowledging that for "image data that was shot by a shooting device, a technique is known to divide the image into plural regions and to perform an image correction with a focus on an emphasis region of the image"). Merely instructing the practitioner to implement an abstract idea on generic computer hardware, without explaining *how* to implement the abstract idea, is not an "inventive concept" that renders an abstract idea patent eligible. *Alice*, 573 U.S. at 223. *See also Sungkyunkwan*, 2017 WL 1900737, at *1 (no "inventive concept" for § 101 purposes where "[t]he method of optimizing exposure on a structured-light 3D camera – the *how* that's nominally the subject of the claimed invention – is absent" from the claim) (emphasis in original). Here, as in *Yu*, "claim 1 is recited at a high level of generality and merely invokes well-understood, routine, conventional components to apply the abstract idea," failing the Step 2 analysis. *Yu*, 1 F.4th at 1045.

### C.      Longitude's Conclusory Allegations Do Not Preclude Dismissal.

Longitude asserts in conclusory fashion that the '109 patent solves the problem of focusing on a "major object" that does "not appear in [the image's] central region." Compl. ¶¶ 97–98. But this is not a plausible allegation for multiple reasons. The claims do not mention a "central region" at all, or exclude a "central" location as the area for image enhancement. The specification likewise contradicts Longitude's claim that such a problem existed; in digital photography, just as in analog photography, photographers can focus in on the person they are trying to photograph, regardless of whether that person is dead center in the field of view. *See* '109 at 3:15-21 ("a photographer (an image file generator) typically focuses on a location to where he (or she) is most interested in," and so "***the emphasis region of the image can be easily determined by using the focused location***" of the digital image); *id*. 11:9-14 ("***in the present embodiment, the emphasis region is a region that***

*is determined based on the location where the generator of the image data (the photographer) focuses on*"). Further, capturing an image where the "major object" exists outside the central region of the image long predates the claimed invention. Famous portraits such as *Whistler's Mother* featured off-center subjects.[7] The '109 patent does not recite an inventive concept by explaining, in the context of digital photography, that for an image of a person, you should focus on that person, wherever they are in the scene. *Cf. Yu*, 1 F.4th at 1045.

Longitude's conclusory allegation of "new, improved image data processing systems and operations" (Compl. ¶¶ 99-102) are also meritless. The '109 patent uses conventional hardware and *known* file types, including multiple standardized data types.[8] And regardless of the specification's disclosures, the *claims* do not disclose or require any new data types or algorithms. *ChargePoint*, 920 F.3d at 769; *see also Crandall Techs. LLC*, 2021 WL 521215, at *2 (Chhabria, J.) (where the asserted claim "lacks any limitation requiring improved technology," the claim "cannot be found to contain an inventive concept"). Here, just as in *Yu*, the patentee's conclusory "allegations of patent eligibility" do not change the Step 1 or Step 2 analysis. *See Yu*, 1 F.4th at 1045-46 (rejecting patentee's claim that district court "erred at the pleadings stage in making certain adverse findings of fact and failing to accept certain allegations in the complaint," including supposedly "improperly disregard[ing] Yu's allegations of patent eligibility," because "a court need not accept as true allegations that contradict matters properly subject to judicial notice," including "the claims and the patent specification" or a "century-old practice" that "concerns a pertinent fundamental concept").

## IV.   CONCLUSION

Because the asserted claims of the '365, '574, '056, and '109 patents recite ineligible subject matter, Counts I, II, III, and IV of the Complaint should be dismissed with prejudice.

---

[7]   *See, e.g.*, Art Institute of Chicago, *Whistler's Mother: An American Icon*, https://www.artic.edu/exhibitions/2712/whistler-s-mother-an-american-icon-returns-to-chicago.

[8]   *See* '109 at 6:38-41 ("Although JPEG format is generally used to store the image data in the digital still camera 20, other storage formats may also be used such as TIFF format, GIF format, BMP format, and RAW data format."); *id*. 6:44-48 ("The image file that was generated in the digital still camera 20 typically has a file structure that conforms to the image file format standard (Exif) for digital still cameras. Specifications for Exif files are laid down by the Japan Electronics and Information Technology Industries Association (JEITA).").

1

2   DATED: August 25, 2023                QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
3

4                                         By /s/ Patrick D. Curran
                                             Melissa J. Baily
5                                            melissabaily@quinnemanuel.com
                                             Antonio R. Sistos
6                                            antoniosistos@quinnemanuel.com
                                             50 California Street, 22nd Floor
7                                            San Francisco, California 94111
                                             Telephone:    (415) 875-6600
8                                            Facsimile:    (415) 875-6700

9                                            QUINN EMANUEL URQUHART &
                                             SULLIVAN, LLP
10                                           Patrick D. Curran
                                             patrickcurran@quinnemanuel.com
11                                           111 Huntington Avenue, Suite 520
                                             Boston, MA 02199
12                                           Telephone:    (617) 712-7100
                                             Facsimile:    (617) 712-7200
13

14

15                                           Attorneys for Defendant GOOGLE LLC.

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT GOOGLE LLC'S PARTIAL § 101 MOTION TO DISMISS